UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**In Re:**

**DOW CORNING CORPORATION,**

Civil Action No. 05-CV-30387-DT

**Reorganized Debtor.**

Honorable Denise Page Hood

———————————————————

**Patricia M. Novak,**

**v.**

**DCC Litigation Facility Incorporated.**

———————————————————/

## MEMORANDUM OPINION AND ORDER

**I.    BACKGROUND**

This matter is before the Court on Patricia M. Novak's Motion to Opt-Out from the Settlement Facility-Dow Corning Trust ("Settlement Facility"). Ms. Novak's son and counsel, Joseph J. Novak, filed a Participation Form on her behalf on November 23, 2004. The Settlement Facility sent Mr. Novak a letter dated January 11, 2005 stating, "[t]he election to opt-out was not signed by the Claimant as required by Annex A Settlement Facility Fund Distribution Agreement of Claims Resolution Procedures, section 3.02, subsection C(v); therefore, your Claim will remain in the Settlement Program." (Ex. To Motion)  Ms. Novak's counsel submitted the instant letter-motion/appeal, along with a copy of Participation Form signed by Ms. Novak, seeking an Order from the Court to allow Ms. Novak to opt out of the Settlement Facility and to file a Notice of Intent to Litigate against the DCC Litigation Facility ("Litigation Facility"). The Litigation Facility sent Mr. Novak a letter indicating that Ms. Novak was not eligible to bring a claim against the Litigation Facility because the Participation Form was time-barred. The Litigation Facility claims the Plan

Documents language is clear and unequivocal requiring the signature of the claimant and that having failed to timely submit a completed Participation Form to the Claims Office by the November 29, 2004 deadline, Ms. Novak cannot pursue a claim against the Litigation Facility but remains a Settling Personal Injury Claimant.

## II.   ANALYSIS

### A.   Plan Interpretation

The Court retains jurisdiction under the Amended Joint Plan of Reorganization ("Plan") "to resolve controversies and disputes regarding interpretation and implementation of the Plan and the Plan Documents" and "to allow, disallow, estimate, liquidate or determine any Claim, including Claims of a Non-Settling Personal Injury Claimant, against the Debtor and to enter or enforce any order requiring the filing of any such Claim before a particular date." (Plan, Art. 8.7.3 and Art. 8.7.8)

The Plan provides that each Personal Injury Claimant shall be afforded the option, "during the six-month period following the Effective Date, to elect to settle or to opt out of the settlement options under the Settlement Facility." (Plan, Art. 5.4) The Participation Form gives a Personal Injury Claimant the opportunity to elect to settle or litigate their Claims under the terms of the Settlement Facility Agreement or the Litigation Facility Agreement, as applicable. (Plan, Art. 1.123) The Settlement Fund and Distribution Agreement, Annex A, provides that Claimants have a right to elect to pursue litigation against the Litigation Facility instead of participating in the Settlement Program but "must affirmatively elect to litigate." (SFA, Annex A, Art. 3.02(a)) Personal Injury Claimants "must make their election by completing, signing and returning the Participation Form to the Claims Office on or before the six (6)-month anniversary of the Effective Date ("Election Deadline")." (SFA, Annex A, Art. 3.02(c)(i)) "Claimants who elect litigation must

sign the Participation Form." (SFA, Annex A, Art. 3.02(c)(v))  "A Claimant whose Participation Form is rejected because it was not submitted by the Election Deadline may appeal to the Appeals Judge." (SFA, Annex A, Art. 3.02(c))  Because this matter has been brought to the Court's attention by the Claimant, the Court exercises its jurisdiction under the Plan to interpret and enforce the Plan terms.  (Plan, Art. 8.7.3 and Art. 8.7.8)

"In interpreting a confirmed plan courts use contract principles, since the plan is effectively a new contract between the debtor and its creditors." *In re Dow Corning Corporation,* 456 F.3d 668, 676 (6th Cir. 2006); 11 U.S.C. § 1141(a) . "State law governs those interpretations, and under long-settled contract law principles, if a plan term is unambiguous, it is to be enforced as written, regardless of whether it is in line with parties' prior obligations." *Id.* "A term is deemed ambiguous when it is 'capable of more than one reasonable interpretation.'" *Id.* (citation omitted).  The word "must" means that the requirement is mandatory and not discretionary. *Perotta v. Gregory,* 4 Misc.2d 769, 771, 158 N.Y.S.2d 221, 223 (N.Y. Sup. 1957); *Lazar v. Towne House Rest. Corp.,* 6 N.Y.S.2d 923, 924, 190 N.Y.S.D. 997 (N.Y. 1959).

The plain and ordinary meaning of the word "must" as set forth in Annex A of the Plan requiring Claimants to affirmatively elect to litigate and to sign the Participation Form is unambiguous.  As noted above, the word "must" means the requirement is mandatory and is not discretionary.  Under Annex A of the Plan, the Participation Form must be completed, signed and returned by the Election Deadline.  Mr. Novak admits that Ms. Novak did not sign the Participation Form when it was submitted to the Settlement Facility.  The Settlement Facility's determination in a January 11, 2005 letter to Mr. Novak that Ms. Novak's Claim would remain in the Settlement Program was not in error.

Mr. Novak claims in his appeal letter to the Court that he was "sure" when he submitted the Participation Form that the instructions said it could be signed by an attorney. However, section 3 of the Participation, directly above section 4 of the attorney signature line, expressly states that the claimant "must" sign the form. (Ex. to Novak motion/appeal) Nothing in the Plan or the Plan Documents allows the Settlement Facility or the Litigation Facility to accept a Participation Form without the appropriate signature, even if the Participation Form was subsequently signed after the Election Deadline. Only the Plan Proponents may jointly amend or modify the Plan. (Plan, Art. 11.4) The Plan Proponents' successors have not agreed in this case to modify the Plan or Plan Documents language.

**B.     Excusable Neglect**

The next issue is whether Mr. Novak's misinterpretation of the Participation Form requirement constitutes "excusable neglect." The Supreme Court in addressing a late claim filed beyond the deadline set forth in Bankr. R. 3003 used the "excusable neglect" standard under Fed. R. Civ. P. Rule 60(b)(1) to determine whether the Bankruptcy Court had the authority to enlarge time limitations under Bankr. R. 9006(b), which is patterned after Fed. R. Civ. P. 6(b). The Supreme Court approved the following factors that a court may consider in finding excusable neglect: 1) the danger of prejudice to the debtor; 2) the length of the delay and its potential impact on judicial proceedings; 3) the reason for the delay, including whether it was within the reasonable control of the movant; and, 4) whether the movant acted in good faith. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 395 (1993). However, the Supreme Court disapproved the allowance of a late claim based on the omissions of an attorney. *Id.* at 396. The Supreme Court noted that "clients must be held accountable for the acts and omissions of their attorneys." *Id.* at

396. A client, having chosen a particular attorney to represent her in a proceeding, cannot "avoid the consequences of the acts or omissions of this freely selected agent," and that "[a]ny other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of her lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney." *Id.* at 397.  In assessing a claim of excusable neglect, "the proper focus is upon whether the neglect of [the parties] *and their counsel* was excusable." *Id.* (emphasis in original).  In applying the Supreme Court's analysis, the Sixth Circuit has noted that it may be excusable for a client to rely on the advice of counsel, however, action or inaction by counsel that leads to successful malpractice suits by the injured client do not qualify as a mistake or excusable neglect under Rule 60(b)(1) and that failure to verify the requirements of the law demonstrates attorney malpractice, not excusable neglect.  *McMurry v. Adventist Health System/Sunbelt, Inc.,* 298 F.3d 586, 595 (6th Cir. 2002) (quotations and citations omitted).

In addressing the factors set forth by the Supreme Court, the Court finds that allowing this one claim to proceed against the Litigation Facility would not prejudice the Debtor.  The Litigation Facility has not provided any evidence that allowing Ms. Novak's claim would affect the remaining funds to litigate claims against the Litigation Facility under the Plan.  Allowing Ms. Novak's claim will not further delay the administration of the Plan since the claims against the Litigation Facility are currently in the initial resolution, pre-discovery phase.  There has been no showing of bad faith on behalf of Mr. Novak, Ms. Novak's counsel, since the Participation Form was filed by the Election Deadline, but without Ms. Novak's signature.  Mr. Novak immediately appealed the matter to the Court after receiving the Settlement Facility's letter indicating that Ms. Novak's Claim remained in the Settlement Program because her signature was not on the form.

However, as to the reason for the failure to provide the Claimant's signature, based on the Sixth Circuit's interpretation of excusable neglect noted above, the failure of Mr. Novak to verify the requirements of the Plan and the Plan Documents regarding a Claimant's signature does not constitute excusable neglect. Mr. Novak has not alleged that he relied on misinformation provided by the Debtor or the Bankruptcy Court or that he was deprived of proper notices regarding the requirements to submit the Participation Form. *See, e.g., In re Isaacman,* 26 F.3d 629, 636 (6th Cir.1994); *In re Halstead,* 158 B.R. 485, 487 (9th Cir. B.A.P. 1993), aff'd, 53 F.3d 253 (9th Cir.1995). Unless the action of the moving party has been delayed by an outside force, there will generally be no cause to apply equitable tolling principles. *In the Matter of Hambright,* 216 B.R. 781, 783 (W.D. Mich. 1997). Mr. Novak claims that it was "his" understanding that the attorney alone could sign the Participation Form on behalf of his client. The Participation Form itself was clear that the Claimant "must" sign the form. There has been no showing that the Ms. Novak's failure to sign the Participation Form before the Election Deadline was excusable neglect. Ms. Novak's Claim must remain in the Settlement Program.

### III.   CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Patricia M. Novak's Motion to File Notice of Intent (**Docket No. 2, filed June 9, 2006**) is DENIED and this matter is CLOSED.

S/ DENISE PAGE HOOD<br>
DENISE PAGE HOOD<br>
United States District Judge

DATED: March 31, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 31, 2007, by electronic and/or ordinary mail.

S/William F. Lewis<br>
Case Manager

6